IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| Plaintiff/Respondent, | § § | CR. No. C-04-530 |
| v. | § § | (C.A. No. C-12-381) |
| GERARDO GILBERTO RIVERA, | § § § | |
| Defendant/Movant. | § § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, AND DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Defendant Gerardo Gilberto Rivera's (Rivera) motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, brief in support, and his affidavit. D.E. 143, 144. The United States filed its combined response and motion to dismiss. D.E. 150. Rivera filed a Reply. D.E. 151. The Court also held an evidentiary hearing. After considering all of the evidence, Rivera's § 2255 claims are denied and he is denied a certificate of appealability.

**I.  PROCEDURAL HISTORY**

This is a checkpoint case. Rivera was stopped at the Sarita Border Patrol Checkpoint on September 5, 2004, when a drug canine alerted to his 1998 Yukon. Rivera gave his consent to search and Border Patrol Agents found 54 pounds of methamphetamine hidden in a secret compartment under the rear floor of the vehicle. Rivera and his passenger were arrested. D.E. 1. Both men agreed to speak to agents after they were read their Miranda rights. The passenger denied any knowledge of the drugs, as did Rivera. Id.

Rivera made his initial appearance in federal court two days after his arrest. D.E. 2. He was appointed counsel the same day. D.E. 5. Preliminary examination was held the following week and appointed counsel cross-examined the Border Patrol agent regarding the events at the checkpoint. D.E. 8, 9.

Rivera was indicted on September 22, 2004, for possession with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine (24 kilograms) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). D.E. 11. He was arraigned on September 30, 2004. D.E. 18. He filed a motion and amended motion to substitute retained counsel for appointed counsel that was granted during the hearing. D.E. 18, 19, 116 at 2-3.

During arraignment, Rivera was advised of the charge against him. He testified he understood. D.E. 116 at 4. He was also advised of the maximum sentence that could be imposed if he were convicted,

> 25 THE COURT: If you are convicted, Mr. Rivera, *you*
> 1 *face a minimum term in federal prison of ten years and a*
> 2 *maximum term of the rest of your life*. You also could be fined
> 3 up to $4 million. In addition to going to prison, when you are
> 4 released, you face a period of supervision similar to parole,
> 5 and your supervision period would be a minimum of five years,
> 6 and could be as long as the rest of your life. If you violate
> 7 your supervision, you could go back to prison for up to five
> 8 more years.
> 9 Also, if you are convicted, Mr. Rivera, you would
> 10 have to pay a $100 special assessment. And if the District
> 11 Judge imposes a fine, you would have to pay community
> 12 restitution up to the amount of the fine.
> 13 Do you understand the punishment that could be
> 14 imposed if you are convicted, sir?

    15 THE DEFENDANT: Yes.

Id. at 4-5 (emphasis added).

    Trial began on November 9, 2004 and lasted through November 15, 2004. D.E. 26, 28, 29, 37. The Fifth Circuit Court of Appeals described the evidence as follows,

> The majority of the government's case consisted of testimony by Border Patrol agents and Drug Enforcement Administration Task Force ("DEA") officers. Beyond Rivera himself, Rivera's nineteen-year-old daughter Sonja, Sonja's boyfriend, and a character witness testified for the defense. . . .[I]n the early morning of Sunday, September 5, 2004, Rivera drove a 1998 white GMC Yukon ("Yukon") to the Border Patrol checkpoint in Sarita, Texas. Rivera was accompanied by his cousin-in-law, Carlos Soto–Torres ("Soto"). Border Patrol Agents Martinez and Salas were on duty at the Sarita checkpoint when Rivera arrived at approximately 3:45 a.m. In response to routine questions, Rivera stated that he was a United States citizen, that the Yukon belonged to him, and that he was traveling to Houston to purchase vehicles. Agent Martinez grew suspicious of Rivera because he avoided eye contact and had a "death grip" on the steering wheel.
>     After Rivera gave Agent Martinez permission to inspect the vehicle, Agent Martinez opened the rear driver's side door and looked under the seat. He observed that the bolt that secured the rear seat to the floor had tool markings. Meanwhile, Agent Salas, a canine handler, conducted a "free-air sniff" of the Yukon with his dog. The dog alerted to the presence of drugs at the rear undercarriage of the Yukon. Agent Martinez then got permission from Rivera to search his car in the secondary inspection area.
>     The agents observed that the Yukon was altered in several ways. The underside rear of the Yukon had a shiny unpainted and un-scratched area, had new screws, and the body of the vehicle had been raised from the frame. Upon lifting the carpet in the cargo area of the Yukon, Agent Salas saw fresh silicone or caulking, and noticed a chemical smell. He discovered a compartment underneath the floorboard behind the rear seat, accessible through a false floor and trap door. Inside the compartment were thirty-seven bundles of methamphetamine, worth $1.7 million, packed in Mexican-made Tupperware-type containers wrapped in plastic. Also inside the Yukon was a toolbox with two of three tools necessary to access the trap door; the third tool was readily available at a hardware or auto parts store.
>     After the agents' discovery of the compartment, Defendant–Appellant Rivera and Soto were placed under arrest. Border Patrol Agent Solis, a

twelve-year veteran of the U.S. Border Patrol and a supervisor at the Sarita checkpoint, interviewed Rivera, but no recording or written statement was made. Rivera told Agent Solis that he was en route to Houston to purchase cars and that he had no knowledge of the drugs in the Yukon. In Agent Martinez's presence, Rivera told Agent Solis that he had personally purchased the Yukon in Dallas about a month ago, but that he could not remember the name or address of the car lot or dealership. When Agent Solis told Rivera that the DEA would subpoena the seller of the vehicle to identify the purchaser, Rivera stated that he did not actually personally travel to Dallas to purchase the vehicle. Rather, his friend Vicente Flores ("Vicente"), who lived in Mexico, had purchased the vehicle in Dallas and brought it to Brownsville for Rivera.

In the evening of the same day, DEA Officers Bussey and Pacheco and Border Patrol Agent Baron took over the investigation and questioned Rivera, without making a recording or preparing a written statement. Officer Bussey testified at trial that Rivera gave the following version of events during this interview: Rivera told them that a month earlier he had purchased the Yukon from his friend Vicente. He denied that he had told Agent Solis that he had gone to Dallas and purchased the Yukon himself. Rivera explained that Vicente was a used car salesman, and that Rivera had offered to purchase Vicente's Yukon in July 2004 for $6,900. Vicente registered the Yukon in Rivera's name and delivered it to Rivera in Brownsville. According to the agents' testimony at trial, though Rivera had told Agent Solis that Vicente's last name was Flores, to Officer Bussey he stated that he did not know Vicente's last name, phone number, or address.

The agents were skeptical of Rivera's claim that he was en route to pick up a car with the Yukon because the vehicle lacked the standard equipment for that business—a tow bar. Additionally, Officer Bussey testified that Rivera could not provide the name or location of the vehicle auction or parking lot to which he was en route. Agents Martinez and Solis, and Officers Bussey and Pacheco all testified that they found Rivera's demeanor suspicious during questioning.

When he took the stand at trial, Rivera testified that he did not agree to a drug transaction with Vicente and that he did not know drugs were in his vehicle. Rivera denied telling the officers that he had bought the Yukon in Dallas. Rather, he insisted that he told them that the vehicle was purchased in Dallas and then brought to Brownsville. Rivera also testified that he gave Vicente's last name to the officers; that he told them the location of the lot where he was to meet Vicente in Houston—a parking lot by a Days Inn; that he had Vicente's number in his phone, but the screen had broken; and that he knew where Vicente lived, but not the address. Regarding his demeanor at the checkpoint, he denied that he had acted nervously and averted eye contact.

>	Rivera's statements to the agents and at trial regarding his whereabouts on September 4 were inconsistent. He had told Officer Bussey that he drove to Mexico on September 4, 2004 in his red Plymouth Breeze, leaving his home in Brownsville at about 10:00 a.m. and returning at about 10:30 p.m. that same day. At trial, however, he testified that on September 4, 2004, he left his home around 11:00 a.m. or noon and drove his Breeze to a McAllen car lot, where he purchased a car. He said that he returned home around 3:30 p.m. or 4:00 p.m. After 5:00 p.m., Rivera's son and Sonja's boyfriend borrowed the Yukon to go to the mall, according to both Rivera's and Sonja's testimony.
>	Certain aspects of Rivera's version of events did remain consistent. He repeatedly said that he received the Yukon and the registration papers from Vicente sometime between August 7 and 11, and that about two weeks later, he re-registered the Yukon and changed its license plates in Brownsville. By all accounts, he also consistently stated that Vicente had borrowed the Yukon on Thursday, September 2, 2004, and returned it on Friday, September 3, 2004, at around 6:00 p.m. During questioning by Officer Bussey and at trial, Rivera said that between 5:00 p.m. and 6:00 p.m. on September 4, he drove the Yukon to an autoparts store in Brownsville. In addition, Rivera's statements and Soto's testimony were consistent that he picked up Soto in Mexico around midnight on September 4, and then returned to his home in Brownsville, where they got into the Yukon.

United States v. Rivera, 444 Fed. App'x. 774, 776-78 (5th Cir., Oct. 13, 2011) (per curiam) (designated unpublished).

The jury found Rivera guilty. D.E. 41. The Court ordered the Probation Department to prepare a Presentence Investigation Report (PSR). D.E. 36. The defense filed a motion for new trial. D.E. 43. The motion was heard and denied on June 6, 2005. D.E. 66.

The PSR calculated Rivera's base offense level of 38 based upon the net weight of the methamphetamine of 11.02 kilograms. U.S.S.G. § 2D1.1(c)(1). Rivera had no criminal history. The resulting sentencing guideline range was 235-293 months, with a minimum mandatory sentence of ten years. 21 U.S.C. § 841(b)(1)(A).

At sentencing, Rivera testified that he read the PSR and reviewed it with his attorney

in Spanish. D.E. 80 at 3-4. No corrections were requested. Id. at 4. The parties agreed that the sentencing guideline range was correctly calculated. Id. Defense counsel argued that the guidelines were too harsh for a first time drug offender and argued for a statutory minimum sentence of 120 months. Id. at 4-8, 11-13. The defendant recited his version of the events again, and the government responded that it did not find Rivera credible for Rule 35 consideration. Id. at 27-28. The Court sentenced Rivera to 235 months in the Bureau of Prisons, to be followed by 5 years supervised release, and a $100 special assessment. Id. at 32. The Court advised Rivera of his right to appeal. Id.

After he was convicted and sentenced, Rivera sent a letter to the Court dated June 14, 2005, in which he stated he was offered a 60 month plea agreement, but went to trial because he was innocent. D.E. 128. He claimed, "My attorney gave me as high of probability that exists (95% chance) that would justly be found innocent at trial." Id. He also stated, "Your Honor, I do not tell lies, I am suffering for fighting for my innocence . . . ." Id.

Rivera's counsel filed a timely notice of appeal (D.E. 68), but failed to pay the docketing fee. Rivera's appeal was dismissed on August 3, 2005, and docketed in this Court on August 16, 2005. D.E. 73, 75, 76. Counsel paid the docketing fee three days after the Fifth Circuit's Order dismissing the appeal for want of prosecution was docketed in this Court.

In March 2007, this Court gave notice that the defense trial exhibits would be destroyed. D.E. 84. They were destroyed the following month.

In April 2009, Rivera filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 85. That motion complained that his trial and appellate counsel

was ineffective on two grounds, first on the basis that counsel "incompetently advis[ed] Movant to reject the government's five year plea offer, and [] by failing to advise Movant of his maximum sentencing exposure if found guilty at trial." D.E. 85 at 2. He also claimed that counsel was ineffective because he failed to timely pay the docketing fee for his appeal and by misleading Rivera to believe that appeal was pending when it had been dismissed. Id. at 3.

The government responded to the motion and conceded that Rivera was entitled to equitable tolling and an out-of-time appeal. At that time, the government reported, "The government has been unable to readily contact Rivera's Appellate Counsel. The government understands that several of Appellate Counsel's clients have made similar claims, which the government has been unable to refute." D.E. 87 at 3 n.3. The Court granted Rivera an out of time appeal and appointed counsel. D.E. 95, 96. During the course of the appeal, the Court and government attempted to reconstruct trial exhibits that were destroyed in 2007. D.E. 123, 126, 129, 130-36. The Fifth Circuit affirmed Rivera's conviction and sentence. D.E. 140.

Rivera filed a motion for relief from judgment pursuant to Rule 60(b), which this Court recharacterized as a motion to vacate, set aside or correct judgment. D.E. 141, 142.

Rivera filed his corrected motion to vacate and brief ins support in December 2012. The government responded and moved to dismiss. Rivera filed a reply. D.E. 143, 144, 149, 151.

## II. MOVANT'S ALLEGATIONS

Rivera claims that trial counsel advised Rivera to go to trial and reject a favorable plea

agreement in a case in which the evidence did not support a likely acquittal. Rivera claims that counsel did not explain the risks of trial and grossly underestimated the sentence that he would receive. Rivera claims that if he had known his true sentencing exposure, he would have accepted the plea offer. Rivera contends that counsel's failures prevented Rivera from making an intelligent decision regarding the offered plea agreement and counsel's failures constituted ineffective assistance of counsel. D.E. 143 at 4, 144 at 2-6, 10-11.

The government opposes Rivera's motion and claims that Rivera's claim is wholly conclusory and should be denied.

### III. ANALYSIS

**A.  28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

**B.  Standard for Claims of Ineffective Assistance of Counsel**

Generally, an ineffective assistance claim presented in a § 2255 motion is properly

analyzed under the two-prong analysis set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>United States v. Willis</u>, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. <u>Id.</u> This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. <u>United States v. Dovalina</u>, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under <u>Strickland</u>, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. <u>Glover v. United States</u>, 531 U.S. 198, 203 (2001); <u>United States v. Herrera</u>, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. <u>Armstead v. Scott</u>, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); <u>Carter v. Johnson</u>, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

**C.    Counsel's Alleged Failure to Advise Rivera of the Risks of Trial**

Rivera claims that counsel did not advise him of his true sentencing exposure of 235 months or more, but instead mentioned no sentence of more than 10 years. Rivera claims that he was offered a plea agreement of 5 years, but counsel advised him he could be sentenced anywhere from 7-10 years if he accepted the plea agreement. Rivera further claims that

counsel told him he had a good chance at acquittal. Rivera contends that if he had known his true sentencing exposure, he would have pled guilty.

The indictment charged Rivera with possession with intent to distribute 24 kilograms of methamphetamine. A review of the drug quantity tables in the sentencing guidelines produces a sentencing range of 235 to 293 months imprisonment. U.S.S.G. § 2D1.1(c)(1). If Rivera had pled guilty to the indictment, his *minimum* statutory sentence would have been 10 years. His guideline sentence, if he received credit for safety valve and acceptance of responsibility, would have decreased to 135 to 168 months, nothing near what Rivera claims he was promised.

The government claims that Rivera has failed to state any facts to support his claims and the claims are conslusory. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. United States v. Woods, 870 F.2d 285, 288 n. 3 (5th Cir.1989); see also United States v. Jones, 614 F.2d 80 (5th Cir. 1980) (failure of movant to state specific facts, "is insufficient to state a constitutional claim.").

The Court recognizes that in his present motion, Rivera does not state when these representations were made or any other details. In his 2007 affidavit, Rivera claimed that he retained Mr. Bill May, that May was accompanied by his assistant Maria, and May approached Rivera with a 5 year deal from the government in exchange for his guilty plea. D.E. 85 at p. 19, ¶ 4. Rivera further stated that if he had known he was exposed to 20 years if found guilty, he would not have rejected the government's offer but would have pled guilty. Id. at ¶ 15. The Court does not find the claim to be conclusory.

A defendant has a Sixth Amendment right to counsel that "extends to te plea-bargaining process." Lafler v. Cooper, — U.S. ----, 132 S.Ct. 1376, 1384 (2012). A defendant is entitled to the effective assistance of competent counsel during plea bargaining. Id. A defendant cannot intelligently choose whether to accept a plea, unless he understands the risks of going to trial. United States v. Herrera, 412 F.3d 577, 580 (5th Cir. 2005). "Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by Strickland." Id. (quoting Teague v. Scott, 60 F.3d 1167, 1171 (5th Cir. 1995)).

> To prove prejudice in the context of a rejected plea offer, a defendant must show that,
>
> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 132 S.Ct. at 1385.

Trial counsel, William E. May died in December 2012 and is no longer available to confirm or dispute the accuracy of Rivera's claim. Rivera was properly advised early on by the federal Magistrate Judge that he faced a minimum of 10 years imprisonment, but could be sentenced to life imprisonment.

The court held an evidentiary hearing on June 25, 2013. See United States v. Rivas-Lopez, 678 F.3d 353, 359 (5th Cir. 2012). Rivera admitted that he lied during his trial testimony and that he lied during sentencing when he claimed that he did not know that drugs

were in the vehicle. Rivera claimed that he told counsel early on that he knew the drugs were there. Rivera claims that his counsel assured Rivera that he could win the case and Rivera should continue to tell the same story he told to Border Patrol agents. Rivera understood counsel to advise him to lie to the Court and jury, which he did.

Rivera also admitted that he lied to the Border Patrol agents when he claimed he did not know about the drugs and he did so long before he spoke to his trial counsel. Rivera testified that his post-trial letter to the Court (D.E. 128) proclaiming his innocence was prompted by counsel. That letter stated, "I do not lie." Id. Rivera admitted that his claim of innocence in that letter was also a lie.

Rivera testified for approximately 45 minutes at the hearing. During his testimony, he claimed that he did not see the PSR before sentencing, in direct contradiction to his testimony at sentencing. No witnesses other than Rivera testified at the hearing.

Before the testimony began, AUSA Booth acknowledged to the Court that she may have offered a favorable plea agreement to Rivera's counsel before trial, but it had been too long for her to recall whether she did or not. Booth advised the Court that she checked her file and there is no record as to whether a plea offer was made. At that time, plea offers were not always recorded in the file.

The sole evidence in support of Rivera's claims is Rivera's testimony. Rivera admitted he lied under oath in this Court both at trial and at sentencing in the hope of acquittal or for a favorable sentence. Rivera admitted he lied in his correspondence to the Court, and lied to the Border Patrol. Despite Rivera's claim that he was telling the truth this time, after hearing

12

Rivera's testimony and observing his demeanor, this Court does not find him credible or trustworthy in this matter. Rivera has not established that counsel failed to advise him of his true sentencing exposure and the risk of going to trial. The Court orally denied the motion.

### IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Rivera has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant

must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Rivera is not entitled to a COA on any of his claims. Reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## V. CONCLUSION

For the foregoing reasons, Rivera's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 143) is DENIED. He is also denied a Certificate of Appealability.

ORDERED this 5th day of July, 2013.

*Hayden Head*
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE